## STATE v. JAMES.

No. 1722.  Decided March 23, 1907 (89 Pac. 460).

1. INCEST — SUFFICIENCY OF INFORMATION. An information, in a prosecution for incest, which alleges that the accused had sexual intercourse with his niece, knowing her to be of such relationship, is sufficient, under Revised Statutes 1898, section 4732, which provides that "the information . . . must be direct and certain as it regards (1) the person charged (2) the offense charged."

2. SAME — STATUTORY PROVISIONS. The words "within and not including the fourth degree of consanguinity," etc., as used in Revised Statutes 1898, section 4211, relating to the crime of incest, are descriptive of the class of persons who are prohibited from marrying, cohabiting, or having sexual intercourse with each other, and are intended to group together all of the different degrees of relationship to which the statute applies, and thereby to avoid the necessity of specifically enumerating them.

3. CRIMINAL LAW — OPINION EVIDENCE — WITNESSES — RESPONSIVE-NESS OF ANSWERS. A witness, in answer to a question whether he had sworn before the magistrate that the crime was committed on September 20th, stated: "I certainly did, and I certainly think that this same crime was committed on that same day." *Held*, that the part of the answer stating what the witness thought should have been stricken out, since it was not responsive to the question, and was, moreover, merely a conclusion of the witness.

4. SAME — INSTRUCTIONS — INVADING PROVINCE OF JURY. In a prosecution for incest, an instruction as to evidence in corroboration of the testimony of an accomplice, containing the statement that the corroborating evidence must "tend in some degree to connect accused with the commission of the offense," that "it may be slight and entitled to but little consideration, nevertheless the requirements of the law are fulfilled if there be any corroborating evidence," etc., invades the province of the jury, since it in effect instructs the jury as to the amount of evidence necessary to warrant a finding against the accused on a material issue.

APPEAL from District Court, First District; W. W. Maughan, Judge.

William J. James was convicted of incest, and appeals.

REVERSED AND NEW TRIAL ORDERED.

*Mahlon E. Wilson* and *C. S. Kinney* for appellant.

*M. A. Breeden,* Attorney General, for the state.

### STATEMENT OF FACTS.

The defendant was informed against in the First judicial district court, sitting at Logan, Utah, for the crime of incest. The information upon which he was tried is, so far as material here, as follows: "That the said William J. James, on or about the 11th day of October, A. D. 1904, at the county of Cache, in the state of Utah, being, and well knowing himself to be, then and there the uncle of one Isabell James, and well knowing the said Isabell James to be his niece, did then and there unlawfully, feloniously, and incestuously have sexual intercourse with the said Isabell James, and carnal knowledge of her body, well knowing her the said Isabell James, to be of said relationship."

Isabell James, the person with whom it is alleged the defendant committed the crime mentioned in the information, was called as a witness by the state, and testified, in substance, that William J. James, the defendant, is her uncle; he being her father's (David James) brother. That on or about the 15th day of October, 1901, while she was alone at her home in Paradise, Cache county, "gathering eggs in her father's barn," the defendant came into the barn, took the eggs from her apron threw them on the ground, and then seized her and laid her down. That she screamed, "Murder!" And he said: "No good of your hollering. Nobody could hear you." That "he pulled my clothes up and ripped my pants and had intercourse with me. I was sixteen years old at the time. He hurt me enough to bring blood." That defendant threatened to kill her if she ever told her folks of the assault he

had made on her. That afterwards, when they met, he would repeat the threat. That she never told her parents nor any one else of the assault, because she was afraid the defendant would kill her if she did. That in the summer of 1902, when she was seventeen years of age, the defendant tried to again ravish her in her father's blacksmith shop, and in the struggle she got hold of a piece of iron, hit him on the head, and got away. That she screamed, but, as her folks at the time were all away from home, she was not heard. That defendant threatened to kill her in case she ever told any one of the assault, and that because of the threat she did not tell her father and mother. That on or about September 20, 1904, defendant again assaulted her and had sexual intercourse with her against her will. In relating the circumstances of this assault the witness said: "The day before he came to me and said: 'I want you to come over and help my mother and sister cook for the threshers.' I told him I couldn't, because my father and mother were not at home. He said 'Oh, yes, you can,' and then I said, 'Yes I'll go.' He came the next day and got me, and I went' over to his place to cook for the threshers. . . . He lives west of Paradise two or three miles, and his house stands on a knoll in plain view with no trees around it. The public road runs right along in front of his home. The spring is south of the house about a block. . . . Will's [defendant's] mother was there; also, my aunt, Mrs. Sarah Howells, and her two little children. I was sent for a bucket of water about 10 o'clock in the forenoon. There was a straw stack about one-third of the distance between the house and the spring. . . . When I came back, he met me just below his straw stack, and stopped me, and wrenched the bucket of water out my hands; emptied it; then packed and dragged me down north of the spring. He says: 'Dont you go to hollering, or I'll cut your throat.' . . . He then had sexual intercourse with me. He then said: 'I'll cut your throat, if you ever tell anybody about this." Then I got my bucket of water and went to the house. I did not say anything to my grandmother about it. I did say something to my aunt about it. She asked me

if I hadn't been acting funny, and I never answered her at first, and then she asked me again, and I said: 'None of your business.' "

The witness also testified that on the forenoon of about the 11th day of October, 1904, at her fathers' residence in Paradise, the defendant again had intercourse with her against her will; that at the time it occurred her father, mother, and the other members of the family were away from home. In detailing the circumstances of the alleged assault, the witness said: "We were standing between the two doors—the bedroom door and the front room. I was standing on the left-hand side of the door and he on the right-hand side. While I was standing there, Mrs. Price came in, and the defendant was present when she came. She said: 'Where is your father and mother?' And I said: 'They have gone to Logan.' Mrs. Price then went home and left the defendant and myself in the room together." She further testified that the defendant then pushed her into the bedroom. That she resisted, but defendant overcame her resistance, threw her on the bed, and had sexual intercourse with her. That before and after the act defendant said, "Now, if you ever tell anybody, I'll kill you right here before you get off the bed." (This alleged act of intercourse of October 11, 1904, is the one charged in the information and relied on by the state for conviction.) That thereafter, on Thanksgiving Day, she met defendant at the home of his father and mother, and he asked her if she was "in the family way," and she answered, "Yes." That she was pregnant at the time, and thereafter she gave birth to a child; the same being born on July 10, 1905. That the defendant is the father of her child. That she had never been married, and had never had sexual intercourse with any man other than defendant.

Elizabeth Price, a witness for the state, testified in part that she visited the James home on or about October 11, 1904; that she saw defendant and Isabell James there; that they were alone. In relating the circumstances of her visit, the witness said: "When I went to the door, it was open, and I asked if the mother was in, and she [Isabell James]

told me, 'No.' I turned around to come back, but they were just ready to walk into the bedroom.   .   .   .   I walked to the gate, and turned around to shut the gate, and I neither saw Bell nor Will.   .   .   .   I could have seen them if they had been standing in the same position. The door was wide open, I mean both doors, both the outside door and the middle door. The middle door is the bedroom door. The bedroom door and the outside door and the gate are exactly in the same line."

D. J. James, a witness for the state, testified that he is the father of the complaining witness, Isabell James, and a brother of the defendant, and that Isabell James is defendant's niece. Evidence was also introduced tending to show that after it had become generally known that Isabell James was about to give birth to a child, and after she and her parents had accused defendant of being responsible for her condition, defendant offered to marry Isabell James, and that on one occasion he admitted he had had sexual intercourse with her once. It was admitted that defendant left his home in Paradise, Cache county, Utah, before daylight on the morning of February 4, 1905, and started across the divide for Brigham city, "got stuck in a snowdrift, unhitched his team, and walked to Brigham city; went from there to Ogden, from Ogden to California, and from California to Blackfoot, Idaho, where he was arrested."

Defendant testified in his own behalf, and stated that he knew Isabell James was his niece, but denied that he had ever had sexual intercourse with her. He denied in detail the testimony of Isabell James relative to the assaults and incestuous acts. The defendant was convicted of the crime charged in the information, and sentenced to serve a term of seven years in the state prison. To reverse and set aside this judgment, defendant has appealed to this court.

McCARTY, C. J. (after stating the facts). The section of the statute (section 4211, Rev. St. 1898) creating and defining the offense of which the defendant stands convicted, so far as material here, reads as follows:

"If any person related to another person within and not includ-
ing the fourth degree of consanguinity, computed according to the
rules of the civil law, shall marry or cohabit with, or have sexual in-
tercourse with, such other so related person, knowing her or him to
be within said degree of relationship, the person so offending shall be
deemed guilty of incest."

It is contended that the information is fatally defective,
in that it does not allege that the appellant, William J. James,
and the complaining witness, Isabell James, are related by
consanguinity. It is conceded that an act of sexual intercourse
between niece and uncle, when the accused is cognizant of the
relationship existing between them, comes clearly within the
prohibitive provisions of the statute. The allegation in the
information that the defendant had sexual intercourse with
his niece, knowing her to be of such relationship, is, we
think, a compliance with section 4732, Rev. St. 1898, which
in part, provides that "the information . . . . must
be direct and certain as it regards (1) the party charged, (2)
the offense charged." The words "within and not including the
fourth degree of consanguinity," etc., are descriptive of the
class of persons who are prohibited from marrying, cohabit-
ing, or having sexual intercourse with each other, and are
evidently intended to group together all of the different de-
grees of relationship to which the statute applies, and there-
by to avoid the necessity of specifically enumerating them.
(*Hicks v. People,* 10 Mich. 395; *People v. Kaiser,* 119 Cal.
456, 51 Pac. 702; *Bergen v. People,* 17 Ill. 426, 65 Am. Dec.
672.)

The next assignment is based on the ruling of the court
in refusing to strike out certain testimony. It appears from
the record that Albert Law, the person who swore to the
complaint upon which the defendant was held by the commit-
ting magistrate, testified as a witness for the state. On cross-
examination, defendant's counsel, evidently to prove the
interest the witness had taken in the prosecution of the
case, and as tending to show his bias against defendant, in-
vited Law's attention to the fact that in the complaint filed
with the magistrate the crime is alleged as having been com-
mitted on September 20th, and asked him the following

question. "And you swore to that fact?" The witness answered: "I certainly did, and I certainly think that this same crime was committed on that same day." Defendant moved to strike out the answer, on the ground that it was not responsive. The court denied the motion. The motion to strike out should have been granted as to that part of the answer wherein the witness said, "And I certainly think that this crime [referring to the crime for which defendant was being tried] was commited on that same day." This part of the answer was not responsive to the question asked, neither was it a statement of fact, but only the conclusion or mere belief of the witness. We are of the opinion that the latter part of the answer could not have been other than prejudical. For the jury, under the circumstances, might well have believed that it was their duty to consider the answer as substantive evidence tending to establish the guilt of defendant, The witness Law was not an eyewitness to, nor did he have any personal knowledge respecting, the circumstances surrounding the alleged commission of any incestuous act of the defendant. It is an elementary, as well as a fundamental, principle of our jurisprudence, that persons accused of crime can only be convicted upon legal evidence, and not upon the mere beliefs of persons who may be called as witnesses. This rule is so well established, and has seen so universally adhered to, that we deem it unecessary to cite authorities in support of it.

It is conceded that, under the facts and circumstances of this case, as testified to by the witnesses, the jury might well have found that Isabell James was an accomplice; and the court, as part of its instructions on this branch of the case, read to the jury section 4862, Revised Statutes 1898, which provides that:

"A conviction shall not be had on the testimony of an accomplice, unless he is corroborated by other evidence which of itself and without the aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient if it merely shows the commission of the offense or the circumstances thereof."

The court further charged the jury as follows: "(7) If you find from all the evidence in the case that the witness Isabell James was an accomplice with the defendant, William James, in the commission of the crime charged in the information, yet that fact, if it be a fact, does not make the witness Isabell James incompetent as a witness in the case. A witness is not incompetent because he or she was an accomplice with the defendant on trial in the particular crime which is charged in the information, and, if the testimony of such, being duly corroborated, is believed by the jury, the defendant may be legally convicted upon it, from a consideration of all the evidence in the case you believe the defendant guilty of the crime charged, beyond a reasonable doubt. (8) You are instructed that if you find from all the evidence in the case that the witness Isabell James was an accomplice in the commission of the crime with which the defendant is charged, yet, even if you so find, you are instructed that it is not necessary that the testimony of the accomplice should be corroborated in every circumstance that she details in evidence. The corroborating evidence need not be sufficient of itself to establish the guilt of the defendant, but it must tend *in some degree* to connect the defendant with the commission of the offense charged. *It may be slight and entitled to but little consideration; nevertheless, the requirements of the law are fulfilled, if there be any corroborating evidence* which of itself tends to connect the defendant with the commission of the offense charged in the information." Appellant excepted to instruction No. 8, and now assigns the giving of it as error.

If the trial court, in connection with the balance of its charge to the jury, had given instruction No. 8 with the parts we have italicized omitted therefrom, no fault could be found with it, because No. 8, when so modified and given in connection with instruction No. 7 and section 4862, Rev. St. 1898, correctly states the law respecting the testimony of an accomplice, as well as the law requiring that such testimony shall be corroborated by other evidence which of itself and without the aid of the testimony of the accomplice

tends to connect the defendant with the commission of the offense. The court, however, in giving that part of instruction No. 8 which we have italicized, invaded the province of the jury, and in effect instructed the jury as to the amount of evidence necessary to warrant a finding against the defend- ant on a material issue in the case. For the jury might well have understood from the expression "in some degree," as the same is used in the foregoing instruction, that if the testimony of the accomplice, provided they found Isabell James to be an accomplice, had been corroborated by any other evidence, the requirement of the statute was fulfilled, notwith- standing such corroborating evidence might be weak and very unsatisfactory to them. The court by instructing the jury that "any corroborating evidence," "slight evidence," "evidence entitled to but little consideration," or evidence which "in some degree" tends to connect the defendant with the crime charged, is a sufficient corroboration of the testimony of an accomplice to warrant a conviction of the accused on the testimony of such accomplice, not only invaded, as we have stated, the province of the jury, who are the sole judges of the weight of the evidence, but minimized, if it did not practically remove, the protection which section 4862, Rev. St. 1898, is intended to give the defendant, and persons similarly situated, from being convicted on the uncorroborated evidence of an accomplice. The objectionable part of the instruction under consideration was evidently copied from the case of *State v. Spencer,* 15 Utah 149, 49 Pac. 302. By an examination of that case, it will be seen that the defendant was convicted mainly upon the testimony of Davis, who was an accomplice in the commission of the crime. On appeal, the defendant contended that the testimony of Davis was not corroborated by other evidence. This court held that the testimony of the accomplice, Davis, was sufficiently corroborated to answer the requirements of the statute; and, in disposing of that feature of the case, evidently intended to hold that, in criminal cases, where a conviction is procured mainly upon the testimony of an accomplice, the judgments will not be disturbed provided

there be corroborative evidence "which of itself and without the aid of the testimony of the accomplice tends to connect the defendant with the commission of the offense," even though in the opinion of the appellate court such corroborating evidence "may be slight and entitled to but little consideration." In other words, it appearing from the record in that case that there was evidence which corroborated the testimony of the accomplice, Davis, and which without the aid of his testimony tended to connect the defendant with the crime charged, and the jury having so found, this court would not reverse the case, even though, as stated, it might deem the evidence on this point "slight," and, in its opinion, "entitled to but little consideration."

It is not the province of this court, in criminal cases, to weigh evidence and make findings, but to determine whether there is, in fact, evidence from which a fact might properly be found. When, in so doing it is said by the court that the evidence, though slight, is sufficient to support the finding complained of, it does not necessarily follow that the jury are authorized to find a fact which to them may appear to be only slightly supported by the evidence, or has alone for its basis evidence which they consider is entitled to but little consideration. What may appear to this court but slight evidence, yet sufficient to support a finding, must, nevertheless, satisfy the jury of the existence of the fact found before they are warranted in making the finding. In other words, before they are warranted in making a finding, they must be satisfied, not that the finding might or could be made, but that the fact exists. To say to the jury that they may find such fact upon evidence which they do not believe to be true would be erroneous; and to say to them that they may make such finding on "slight evidence," or on "evidence entitled to but little consideration," as was done in the case at bar, is also bad, though not so glaring.

The case is reversed, with directions to the trial court to grant a new trial.

STRAUP and FRICK, JJ., concur.