## STATE v. PARK.

No. 2502. Decided April 23, 1914 (140 Pac. 768).

1. ADULTERY—EVIDENCE—SUFFICIENCY—MARRIAGE. On a trial for adultery, evidence *held* sufficient to support a jury finding that accused was married.[1] (Page 364.)

2. CRIMINAL LAW—SUFFICIENCY OF EVIDENCE—CORROBORATION OF ACCOMPLICES. On a trial for adultery, evidence that accused, a married man, was alone with a nineteen-year-old girl, a ward of the state industrial school, in a hotel room in the city where he resided, about two thirty at night, and quite early the next

---

[1] State v. Thompson, 31 Utah, 228, 87 Pac. 709; State v. Greene, 33 Utah, 497, 94 Pac. 987; State v. Moore, 36 Utah, 521, 105 Pac. 293, Ann. Cas. 1912A, 284.

morning, in connection with proof of false and contradictory statements as to his whereabouts that night, sufficiently corroborated her testimony that they occupied the same bed and had sexual intercourse, within Comp. Laws 1907, sec. 4862, forbidding convictions on the testimony of an accomplice unless corroborated by other evidence tending to connect accused with the commission of the crime. (Page 365.)

APPEAL from District Court, Fourth District; *Hon. A. B. Morgan,* Judge.

Albert Park was convicted of adultery and he appeals.

AFFIRMED.

*J. W. N. Whitecotton* and *W. E. Rydalch* for appellant.

*A. R Barnes,* Attorney-General, and *E. V. Higgins* and *G. A. Iverson,* Assistant Attorneys-General, for the State.

McCARTY, C. J.

The defendant was, on the 29th day of January, 1913, convicted in the district court of Utah County of the crime of adultery alleged to have been committed in said county on the 1st day of September, 1912. It appears from the record that the girl with whom it is alleged the defendant committed the offense charged in the information was, at the time of the alleged offense, nineteen years of age, and also that she was a ward of the Industrial School of this state. The girl, hereafter referred to as the prosecutrix, was called as a witness by the state and testified that she met and became acquainted with defendant at a dance in Springville City some time in August, 1912; that she again met defendant on the 1st day of September, 1912; and that the circumstances leading up to and under which the offense charged was committed were as follows: As the prosecutrix, in company with "a girl friend and two boy friends," were returning home from a dance in Springville at about twelve-thirty a. m., she and her companions stepped into an ice cream parlor, and immediately thereafter defendant, in

company with "two girls and two boys," came in. The defendant invited the prosecutrix to join him and his companion in what seems to have been a "joy ride" to Spanish Fork and return. This the prosecutrix consented to do. The party then entered the automobile, which was started towards Spanish Fork; the prosecutrix and defendant occupying the front seat in the car. She further testified, quoting from the record: "When I got into the automobile at Springville, Bert (defendant) was alone in the front seat, and I took a seat beside him. . . . Bert drove the machine. . . . He said: 'We will go to Spanish Fork, and then I will let you out when we come back. We won't be gone long.' . . . He said he would see me home. . . . At Spanish Fork we drove up to one of the drug stores and there got some beer. The beer was put in the machine, and we started back towards Springville. We started up the road . . . and stopped when we first drank. All the parties drank beer and there were six of us; we drank out of the bottles. We came back through Springville, and I asked to get out, and they would not listen to me. From Springville we came right on to Provo. They (referring to the defendant's male companions) took their girls home. The boys came back and got in the car, and we drove around as far as the Lamar Hotel. The boys all got out and went around the hotel and left me in the car. The defendant came back, I should think in about fifteen minutes, and the other boys left. Bert and I went down to the garage and came back to the Lamar Hotel, where we stayed the balance of the night. . . . I carried some of the bottles (referring to the beer) to the Lamar Hotel in a rain coat. I had two bottles in each pocket. We went to our room, where we undressed nearly an hour afterwards. During that hour we were drinking and talking. . . . We both occupied the same bed and had sexual intercourse." She also testified that as they were passing along the corridor of the hotel leading to their room she saw a man (Cal. Hanson) lying on a bed in one of the rooms; that they stopped and talked with Hanson about ten minutes, and then

went to their own room, No. 14, Hanson going with them; that Hanson remained and talked with them about twenty minutes and then returned to his own room; that it was after two o'clock a. m. when Hanson returned to his room. Cal. Hanson was called as a witness by the state and testified that on the night in question he occupied room No. 11 in the Lamar Hotel; that at about two o'clock a. m. defendant and the prosecutrix came to his room and talked with him about ten minutes, and from his room (room No. 11) they all went to room No. 14; that he remained in room No. 14 about twenty minutes and then returned to room No. 11, leaving defendant and the prosecutrix together in room No. 14. "Q. Did you see them again after that? A. Not until next morning. Q. Did you see them in the morning? A. Yes, sir. Q. Where were they? A. In the room. Q. Both there? A. Yes, sir. Q. About what time? A. Well, I couldn't say hardly what time it was, quite early, probably seven o'clock. . . . She was dressed, in full costume, (and) Bert (defendant) was dressed, in full costume." Hanson also testified that they all took breakfast together that morning at a nearby restaurant. George T. Judd, who, at the time the offense charged is alleged to have been committed, was sheriff of Utah County, was called as a witness by the state and testified that he had a conversation with defendant about the 3d or 4th day of September, 1912; that he asked defendant "where he was on Saturday night the latter part of August," and that the defendant stated that he went to Springville and then back to Provo; that he also asked defendant where he stayed that night, and he answered that he stayed at home; that he asked defendant if "he knew the whereabouts" of the prosecutrix on that night, and that defendant answered that he did not. Mr. Judd also testified that he had another conversation with defendant a few days thereafter, about the 10th, quoting: "I asked him where he was on the night of the last of August and the 1st of September, and he said he was in the Lamar rooming house. I asked him why he did not so state to me in the former conversation. He said

he did not know why. I asked him why he stayed in room No. 14 of the Lamar rooming house, and he said he did not stay there. He said he stayed in room No. 11, with Cal. Hanson that night."

Counsel for the defendant, in their printed brief, contend that there is not·sufficient evidence to support a finding that the defendant was a married man at the time of the alleged commission of the crime charged. The prosecutrix was asked on cross-examination if she made certain statements while testifying in the cause at the preliminary hearing before the committing magistrate in conflict with portions of her testimony given at the trial, and she answered that she did, but that her testimony in that regard given at the preliminary hearing was not true. On being further questioned by defendant's counsel as to why she so testified at the preliminary hearing, she answered: "Well, because after I heard he was a married man I didn't want these things to get out about him and about me. That's why. Q. Because he was a married man? A. Yes, sir. Q. When did you learn that? A. After I had been there with him. . . . Q. What other reason was there why you did not want to tell the truth . . . when you testified at the other trial? A. Well, simply because . . . I didn't want to testify against Bert (defendant)—in one way I didn't want to because I never have been with married men and I knew he was married. After I found out he was married, I was doing this for his wife's sake. Q. So, to save Bert's wife was one object and to save Bert was another? A. Yes, sir. Q. Now, was there any other thing? A. No, sir; just those two things." George T. Judd, a witness for the state, testified on this point as follows: "Q. Did you have any conversation with him (defendant) . . . relative to whether or not he was a married man? A. Yes, sir. Q. What was the conversation? A. That he was married. Q. Was anything said about how many children he had? A. As I remember, he said that he had two. Q. What were you talking about? . . . A. Talking about this case. . . .

Q. Do you know whether or not Mr. Park's wife is now alive? A. Yes, sir. Q. Is she? A. Yes, sir." We think this evidence was sufficient to support a finding by the jury that the defendant was a married man. [*State v. Thompson*, 31 Utah, 228, 87 Pac. 709; *State v. Greene*, 33 Utah, 497, 94 Pac. 987; *State v. Moore*, 36 Utah, 521, 105 Pac. 293, Ann. Cas. 1912A, 284; Underhill, Crim. Ev. p. 446.]

The defendant offered no evidence, and the cause was submitted to the jury on the evidence introduced by the state, the substance of which we have set forth. When the state rested, the defendant made a motion that he be discharged on the ground that the prosecutrix was an accomplice, and that there was no evidence except that given by her "tending to show that any crime had been committed, . . . and that there is no evidence whatever in the record corroborating the statements of the complaining witness," the prosecutrix. Defendant also requested the court to charge the jury as follows: "You must, under the evidence in this case, find and return a verdict . . . in favor of defendant not guilty." The overruling of the motion and the refusal of the court to direct a verdict in favor of defendant are the errors assigned and relied on for a reversal if the judgment. Comp. Laws, 1907, section 4862, provides that a person cannot be convicted of a crime on the testimony of an accomplice unless such accomplice is corroborated by other evidence which of itself and without the aid of the testimony of the accomplice shall tend to connect the defendant with the commission of the crime charged in the information; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Counsel for defendant contend with much earnestness that the testimony of the prosecutrix was not corroborated by other evidence as required by the foregoing provision of the statute. We do not agree with counsel. Cal. Hanson testified that he went with defendant and the prosecutrix to room No. 14 of the Lamar rooming house at about two-thirty

o'clock a. m. on the night in question, and that in about twenty minutes thereafter he went to his own room, leaving defendant and the prosecutrix together and alone in room No. 14, and that he again saw them alone in this room "quite early, probably seven o'clock," the following morning. The evidence therefore tends to show that defendant, a married man, was seen alone with a girl nineteen years of age, who at the time was a ward of the Industrial School of this state, at about two-thirty at night, an unusual and unseemly hour, in a room of a hotel in the city where he at the time resided, and was next seen in the same room alone with the girl "quite early" the following morning. From this conduct, unexplained, the inference is permissible that he remained alone with the girl in the room from two-thirty a. m. until seven a. m., and, when considered in connection with the evidence of the witness Judd that the defendant made conflicting and false statements regarding the room occupied by him that night, is, we think, sufficient corroboration of the prosecutrix tending to connect the defendant with the commission of the offense.

The judgment is affirmed.

STRAUP and FRICK, JJ., concur.