## STATE v. POWELL.

No. 2571.   Decided October 5, 1914 (143 Pac. 588).

1. CRIMINAL LAW—EVIDENCE—CORROBORATING TESTIMONY—ACCOMPLICES. Evidence that accused rode a bare-footed horse, whose tracks were like those leading from the place where the steer was killed to a point not far from accused's house, where they were lost in other tracks, and that accused thereafter got beef from one who admitted he participated in the theft, is not sufficient to justify a conviction on the accomplice's testimony under Comp. Laws 1907, Sec. 4862, declaring that a conviction shall not be had on the testimony of an accomplice, corroborated by other evidence which in itself tends to connect accused with the commission of the offense, for none of the evidence in itself connected accused with the offense.[1] (Page 196.)

2. CRIMINAL LAW—TRIAL—INSTRUCTIONS. In a prosecution for cattle theft, where the only direct evidence against accused was

[1] *State* v. *Spencer,* 15 Utah 154; 49 Pac. 302; *State* v. *James*, 32 Utah 152; 89 Pac. 460; *State* v. *Lay*, 38 Utah 143; 110 Pac. 986; *State* v. *Park*, 44 Utah 360; 140 Pac. 768.

the testimony of a confessed accomplice, the court charged that all persons concerned in the commission of a crime, whether they directly aided or not, were principals, that it was the claim of the State that accused committed the offense jointly with the witness, that a conviction could not be had upon the testimony of an accomplice unless he was corroborated, that the fact that the witness was an accomplice did not make him incompetent, and that if he was corroborated a conviction might be had upon his testimony. *Held*, that the instruction was misleading in failing to define an accomplice and allowing the jury to proceed on the theory that the witness, being a principal, did not need corroboration. (Page 199.)

Appeal from District Court, Seventh District, *Hon. A. H. Christensen*, Judge.

Orson M. Powell was convicted of grand larceny. He appeals.

REVERSED and remanded.

*King & King* for appellant.

*A. R. Barnes*, Attorney General, and *E. V. Higgins* and *G. A. Iverson*, Assistant Attorneys General for the State.

FRICK, J.

Orson M. Powell, the appellant, and one Brigham M. Smith were jointly charged with the offense of grand larceny; that is, with having stolen and killed a steer in Emery County, Utah, on the 17th day of January, 1913. Smith pleaded guilty to the charge and was sentenced to serve a term in the Utah state prison. Powell was tried and convicted, and appeals.

Among other errors assigned appellant's counsel insist that the evidence is insufficient to sustain the finding of the jury, and that the court erred in its charge, as hereinafter stated. The evidence upon which appellant was convicted, apart from that given against him by said Smith, was all circumstantial. Smith testified in substance that he and appellant, on the afternoon of the 17th day of January, 1913, at 3 or 3:30 o'clock, killed the steer in question in a ravine or

washout on the range; that on that night he alone loaded the beef into a wagon and hauled it to where he lived; that on Sunday following appellant got some of the beef and took it to his home. Mr. Lidell, the owner of the steer, in substance testified that some of his cattle, about 150 head, were feeding on the range northerly of and in the vicinity of where the steer was killed; that on the 20th day of January, 1913, he missed the steer in question, and that on the 25th of that month he found where it had been killed in a large washout, and also found enough of the legs and hide to identify the steer; that he noticed some tracks made by some men at and near the place where the steer was killed; that he also noticed some horse tracks, and from them it was apparent that two horses were at the place where the killing occurred; that said tracks from thence led in the direction of where appellant lived, a distance variously given of from 3½ to 4½ or 5 miles; that one horse was shod on its hind feet, but had no shoes on its front feet; that the other horse was not shod; that he and one Acord, a deputy sheriff, went to the place where the steer was killed on the 27th day of January, and they both again saw the horse tracks and then examined them more closely; that in examining the tracks of the bare-footed horse the witness said he noticed "no special marks"; that he noticed "only it was a horse track"; that he and the deputy sheriff traced the horse tracks toward appellant's home, and to within 200 yards thereof, but did not and could not determine whether the tracks stopped there or went beyond his home along the public highway; that there were many horse tracks in that vicinity. Acord, the deputy sheriff, practically corroborated the testimony of Mr. Lidell. He also said that he carefully examined the horse tracks; that he thereafter, in the month of February following, rode a horse and appellant rode another some eighteen miles to the county seat of Emery County; that at that time appellant rode a bare-footed horse, and that the witness, by observation, but without making any measurements, compared the tracks made by the horse ridden by appellant with the tracks of the bare-footed horse aforesaid, and that from such ocular

examination and mental comparison the tracks made by the horse appellant rode at the time, in his judgment, were the same as the tracks made by the bare-footed horse aforesaid. This witness, however, when asked whether there were not "thousands" horses which made similar tracks said, "Yes, sir; a few head." And he further testified in that regard, "I cannot say how many." He was also asked in that connection, "Well, you are not prepared to say that this footprint was made by this horse that Mr. Powell (appellant) rode?" He answered, "No, sir." The footprints referred to were the ones leading from the wash towards appellant's home, and which the witness had compared with those of the horse appellant rode to the county seat, as before stated. It was also shown that the witness Brigham M. Smith rode the horse which was shod on the hind feet, but there was no evidence whatever, apart from Smith's, that appellant was with Smith on the day the steer was killed, or that appellant was seen in that vicinity by any one; but it was shown without conflict that appellant was seen by many persons on that day and afternoon at other places. There was also evidence to the effect that appellant got some beef from the home of the witness Smith on the Sunday following the alleged killing of the steer. This, however, was denied by Powell and others.

The foregoing, in substance, is all the evidence connecting the appellant with the crime. Counsel for appellant contend that apart from the testimony of Mr. Smith, who was an accomplice, there is no evidence whatever connecting appellant with the crime, and hence the conviction is contrary to Comp. Laws 1907, section 4862, which reads as follows:

"A conviction shall not be had on the testimony of an accomplice, unless he is corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient if it merely shows the commission of the offense or the circumstances thereof."

The Attorney General and his assistants, in their brief, state their position thus:

"Respondent concedes that the evidence offered by the State, other than that of the witness Smith, standing alone, would not support a verdict of guilty; but it is not required that corroborative evidence shall, of itself, be so strong as to establish the guilt of the defendant. All the statute requires is that there be some evidence which, by itself and without the aid of the testimony of the accomplice, *shall tend to connect* the defendant with the commission of the offense"— citing *State* v. *Spencer,* 15 Utah 154; 49 Pac. 302; *State* v. *James,* 32 Utah 152; 89 Pac. 460; *State* v. *Lay,* 38 Utah 143; 110 Pac. 986.

The question of what is sufficient corroboration under the statute is discussed somewhat at length in *State* v. *Lay, supra.* In that case we arrived at the conclusion that the alleged evidence of corroboration was insufficient. Upon the other hand, in the case of *State* v. *Park,* 44 Utah 360; 140 Pac. 768, the evidence of corroboration was held sufficient. Assuming, for the purposes of this decision, that the law is correctly stated by counsel for the State, yet the question we must answer is: Is there any evidence, when considered independently of the testimony of the accomplice Smith, which "tends to connect" appellant with the crime charged in the information? Can it be said that the testimony of Mr. Lidell and that of Mr. Acord respecting the horse's tracks amounts to corroborating evidence which tends to connect appellant with the crime? We think not.

In the first place, it is a matter of mere conjecture whether the tracks of the bare-footed horse were made by appellant's horse, and whether those leading away from the place where the steer was killed were the same as those made by the horse which appellant rode to the county seat as testified to by the deputy sheriff. When it is kept in mind that the tracks were not seen or observed until at least seven days after the tracks were supposed to have been made by one witness, and not until nine days thereafter by the other one, it is not surprising that the witnesses would not state that the horse's tracks referred to were made by the same horse.

Again, it is mere conjecture whether the tracks of the bare-footed horse seen at or near the place where the steer was killed were the same as those seen in the vicinity of appellant's home. The witnesses certainly did not testify that they were, and from all they did testify the conclusion that the tracks were the same, is sheer conjecture. The fact is that almost any one who owned a bare-footed horse with somewhat similar feet could have been accused and convicted just as well as the appellant. It is often the case that both lawyers and laymen do not entirely eliminate from their minds, when they come to consider the question of corroboration, all of the evidence given by the accomplice which tends to connect the accused with the offense charged. When all of the accomplice's testimony is not excluded from the mind, one may easily imagine evidence to be corroborating, when in fact it is not. This, it seems to us, is the situation with counsel for the State in this case. If it be assumed that the steer in question was stolen, and that there were no evidence connecting appellant with the theft, excepting the testimony relating to the horse tracks, would any reasonable mind from that testimony alone arrive at a fixed conclusion that appellant was connected with the crime? We think not. As already stated, the conclusion is just as strong that any one else, who owned or rode a horse with bare hoofs somewhat the same in size as those of the horse which was owned by appellant, was connected with the crime.

But it is contended that there is other corroborating testimony connecting the appellant with the offense. It is said that the fact testified to that appellant came to the Smith home and took away some beef on the Sunday after the Friday on which the steer was killed, as testified to by Smith, the accomplice, and by his mother and brother, corroborates Smith and connects appellant with the theft. The evidence on which this conclusion is based is, if possible, more remote and more conjectural than that of the horse tracks. Suppose it had been shown that a Mr. Brown, or a Mr. Green, or a Mr. Jones, or any two of them, had obtained some beef from the Smith home on the Sunday in question; would that fact, when considered apart from anything that Smith had testi-

fied to, as it must be, connect either one with the theft? And if two had been there, then which one of the two? Let it be remembered that there were only two horses' tracks seen leading from the washout where the steer was killed, and hence there could not have been three riders. We think the fallacy of the State's counsel's contention is in the fact that they do not entirely eliminate from their minds the facts testified to by Mr. Smith, the accomplice, when they come to consider the alleged corroborating evidence. Of course, if this is not done, then one may conceive that there is some evidence which connects appellant with the crime charged. If such a course be permitted, however, the statute we have quoted above is ignored and annulled so far as this case is concerned. The writer has always been of the opinion that the whole matter of whether the testimony of an accomplice should be given credence or not should be left to the jurors, and they should determine the weight to be given it in view of all of the facts and circumstances in evidence before them. But such is not the law of this jurisdiction, and we have no right to fritter away the statute, nor can we shield ourselves behind the fact of permitting the jury to do so. Ordinarily there is not much difficulty in determining whether there is some independent evidence which tends to connect an accused with the offense testified to by an accomplice, and because there may arise a case like the one at bar now and then, is no reason why the accused should not receive the benefit of the statute.

If, however, we should be wrong in our conclusion that there is no corroborating evidence yet there is still another reason why the judgment of conviction in this case cannot prevail. The court charged the jury that "all persons concerned in the commission of a crime, * * * whether they directly commit the act constituting the offense or aid and abet in its commission, are principals in any crime so committed." The court further charged, under a separate instruction, that "it is claimed by the State that the defendant, Orson M. Powell, committed the offense" jointly with Brigham M. Smith, the witness who testified against appellant; that under the law of this state a con-

viction shall not be had upon the testimony of an accomplice, unless he is corroborated as stated in the statute, practically incorporating the statute in the charge; that if the jury "should find and believe, from all the evidence in the case, that the witness Brigham M. Smith was an accomplice with the defendant, Orson M. Powell, in the commission of the crime," that that fact "did not make the witness Brigham M. Smith incompetent as a witness in the case,  *   *   *  and if the testimony of such witness, being duly corroborated as above mentioned, is believed by the jury, the defendant may be legally convicted upon it if, from a consideration of all the facts in the case, you believe the defendant guilty of the charge." The court then proceeds to tell the jury that although they find that the witness Brigham M. Smith was an accomplice, yet in order to convict the defendant they need not also find that the "testimony of the accomplice should be corroborated in every circumstance that he details in evidence. The corroborating evidence need not be sufficient of itself to establish the guilt of the defendant, but it must, of itself and without the aid of the testimony of the accomplice, tend to connect the defendant with the commission of the offense charged." Appellant's counsel excepted to the charge as a whole, and also excepted to it by segregating it into various parts. They now contend that, in view that the court did not anywhere define what in law constitutes an accomplice, but left it to the jury to say whether the witness Brigham M. Smith was an accomplice or not, therefore the charge tended to mislead and confuse the jury.

It seems to us that, in view that the court had told the jury that all who are concerned in committing a crime or who abet its commission are principals, the jury may have so construed the charge as to arrive at the conclusion that the appellant and Smith were principals, and if they were principals they were not also accomplices, and hence they found that the witness Smith was not an accomplice, and therefore his testimony needed no corroboration in order to convict appellant. In view of the entire absence of corroborating evidence as before pointed out, one is easily led to the conclusion that the jury may have so construed and ap-

plied the instructions excepted to. No doubt, when an accused goes upon the stand, as in this case, and denies all complicity with the crime, there arises a conflict in the evidence with regard to the question of accomplices. The jury must therefore find the fact whether the accused participated, and if they so find then it follows that he and the witness who testified that both committed the crime are accomplices as a matter of law. The court, therefore, should inform the jury in every case that, if they find the fact to be that the accused was connected with the commission of the offense with the witness who testifies against him, then the witness is an accomplice and the statute requiring corroboration applies. In this case the court did not even inform the jury what constitutes an accomplice, but left them to determine the question in their own way. The jury may therefore have assumed that since the accused and Smith were principals they were not accomplices, and therefore they could consider Smith's testimony as sufficient to convict without any corroboration. Whenever it is possible to do so, the court should charge the jury in concrete rather than in abstract form. Since the evidence of Smith connected the defendant with the crime charged, the court should have informed the jury that if they found that the appellant was in any way connected with the commission of the crime charged in the information, and they further believe that the witness Smith who testified against him was also connected with the commission thereof, that in such event they must find that the two were accomplices, and hence the corroboration required by the statute was necessary in order to convict. · Had the court so instructed, the jury could not have gone wrong. This all could have been done by the use of fewer words than the court did in fact use in the charge. If there is not sufficient corroborating evidence to connect the accused with the commission of the crime charged to authorize the submission of that question to the jury, the court should direct the jury to find a verdict in his favor. Under the evidence that should have been done in this case.

There are other assignments; but, in view that in all prob-

ability they will not again arise on a second trial, we need not consider them.

The judgment is reversed, and the cause remanded to the District Court of Emery County, with directions to grant a new trial, and to proceed with the case in accordance with the views herein expressed.

McCARTY, C. J., and STRAUP, J., concur.