STATE v. GARDNER et al.

No. 5365.   Decided November 29, 1933.   (27 P. [2d] 51.)

*J. Vernon Erickson,* of Richfield, for appellant.

*Joseph Chez,* Atty. Gen., and *John D. Rice,* Deputy Atty. Gen., for the State.

ELIAS HANSEN, J.

The defendant, John W. Gardner, was convicted of the crime of grand larceny and sentenced to serve an indeterminate term in the state prison. He appeals. He attacks the judgment solely upon the ground that there was no evidence other than the testimony of an accomplice to connect him with the commission of the crime of which he was convicted. Defendant Colburn was tried jointly with appellant but the former has not appealed. The cause is thus here on the appeal of Gardner only.

The following is a summary of the state's evidence: Moroni Barney testified that he resided at Elsinore, Utah; that during the summer of 1931 some of his cattle were being pastured by Walter Ogden; that among the cattle was a heifer between one and two years old; that the heifer was bluish roan in color; that it was branded M B on the left ribs; that an ear tag upon which was his name and address was on the ear of the heifer; that in July, 1931, he saw the hide of the heifer when it was shown to him by the sheriff of Piute county; that he did not give his consent to any one to kill the heifer; that on July 23, 1931, the defendant Gardner came to him while he was cutting grain and stated that

he, Gardner, "wanted to trade for a heifer * * * a kind of a blue or roan holstein looking heifer. * * * And he asked me what I would take for it and I said I didn't know hardly, I would have to see it. So I told him one of these days I would drive up and look at it and see what I would take. So he says, 'a friend of mine killed it.' He says, 'I would like to settle with you for it.' He says, 'He was a poor man. * * * I have not got anything right now, but I will sign a note or do anything that I can.' He told me about the ear tags and the brands"; that after he had the conversation with the defendant, the sheriff of Piute county brought a hide; the hide was just like the one defendant Gardner described; that the hide was badly decayed; that he was unable to find the brand on it; that later on the same day defendant Gardner "called me to one side * * * he told me that this man that killed this calf was Walt Baker. He said he would like to get a Bill of Sale and have it dated along the latter part of June."

Walter Ogden testified that he resided at Richfield, Utah; that in April, 1931, he received about eighteen head of cattle to pasture from Moroni Barney; that in July he went up to his property with the sheriff of Piute county; that they dug up a hide which was buried in some mulberry bushes on his property; that he recognized the hide as being from one of the animals he received from Moroni Barney; that he first noticed that the animal, from which the hide was taken, was missing in the latter part of June; that the hide was buried in Piute county, Utah; that it looked as though the animal from which the hide was taken had been killed there.

Irvine Allen, the sheriff of Piute county, testified that he assisted in digging up the hide and entrails of a heifer which was buried on the premises of Walter Ogden; that the place where the hide and entrails were buried was in Piute county, Utah; that after the defendant Gardner was arrested and while he was taking him and Colburn from Richfield to Junction, Gardner "volunteered the statement that, 'It is our own fault. If we didn't want to be in this kind of trou-

ble we better behave ourselves; we got nobody to blame but ourselves for this.' "

V. M. Fairbanks, sheriff of Sevier county, testified that he arrested the defendant Gardner at Monroe on July 22; that while he was taking Gardner from Monroe to Richfield, Gardner said that Mr. Baker brought the heifer to his (Gardner's) place and that he and his wife and a Mrs. Johnson attempted to bottle the meat; that the meat was beginning to spoil because it had been allowed to remain in the car too long. Mr. Fairbanks further testified that he assisted in digging up an animal's hide and entrails which were buried on the premises of Walter Ogden; that the hide was apparently from a holstein calf and was a sort of roan in color.

Walter Baker testified that during the month of June, 1931, he in company with the defendants, Gardner and Colburn, went fishing in Sevier Canyon below Marysvale; that he went down the river fishing, leaving defendants, Gardner and Colburn, at the car; that some one took a gun out of the car but he did not know whether it was Gardner or Colburn; that when he was about 300 yards down the river he heard a shot; that in about three-fourths of an hour he lost his fish hook and returned to the car; that when he returned the defendants, Colburn and Gardner, said: "We have got a beef, will you help us pack it to the car?" that he assisted in carrying the beef to the car; that Colburn buried the hide and entrails; that the hide was of a bluish spotted color; that the meat was placed in the car and covered with a quilt; that they arrived at the residence of Gardner about 4 o'clock in the afternoon; that the meat was left in the car until after dark when it was taken out of the car and hung up in a tree; that the next morning the meat was taken into the home of Gardner and bottled by his wife and a Mrs. Johnson; that he received a beating from defendant Gardner, his brother-in-law, about the 1st of July but he did not say to defendant Gardner and his wife that he would get him one way or another.

Defendant Gardner testified in his own behalf. His wife and defendant Colburn also testified on behalf of the appellant. Their testimony, in the main, is in direct conflict with the state's evidence. Appellant admitted that he had a conversation with Mr. Barney with respect to the purchase of the calf in question. He further testified that he attempted to settle for the calf at the request of defendant Baker. He denied having had the conversations testified to by the sheriffs of Sevier and Piute counties.

It was upon substantially the evidence thus summarized that the cause was submitted to the jury and upon which the defendants Gardner and Colburn were found guilty of the crime of grand larceny. The provision of our statute relied upon by the defendant for a reversal of the judgment of conviction reads as follows:

"A conviction shall not be had on the testimony of an accomplice, unless he is corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense; and the corroboration shall not be sufficient if it merely shows the commission of the offense or the circumstances thereof." Comp. Laws Utah 1917, § 8992.

This court has frequently had occasion to pass upon the question of the character of the corroborating evidence which is, and which is not, sufficient to sustain a conviction. Among the cases dealing with that question are: *People* v. *Lee*, 2 Utah 441; *State* v. *Spencer*, 15 Utah 149, 49 P. 302; *State* v. *Collett*, 20 Utah 290, 58 P. 684; *State* v. *James*, 32 Utah 152, 89 P. 460; *State* v. *Lay*, 38 Utah 143, 110 P. 986, 987; *State* v. *Hansen*, 40 Utah 418, 122 P. 375; *State* v. *Kimball*, 45 Utah 443, 146 P. 313; *State* v. *Park*, 44 Utah 360, 140 P. 786; *State* v. *Bridwell*, 48 Utah 97, 158 P. 710; *State* v. *Frisby*, 49 Utah 227, 162 P. 616; *State* v. *Baum*, 47 Utah 7, 151 P. 518; *State* v. *Powell*, 45 Utah 193, 143 P. 588; *State* v. *Elmer*, 49 Utah 6, 161 P. 167; *State* v. *Stewart*, 57 Utah 224, 193 P. 855; *State* v. *Butterfield*, 70 Utah 529, 261 P. 804; *State* v. *Cox*, 74 Utah 149, 277 P. 972; *State* v. *Laris*, 78 Utah 183, 2 P. (2d) 243.

The rule which this court has uniformly held to be the test of the sufficiency of the corroborative evidence to sustain a verdict of guilty is that while such evidence may not in itself be sufficient to sustain a conviction, yet, it must implicate the accused in the commission of the crime charged. Corroborative evidence must be inconsistent with innocence and is not sufficient if it merely casts a grave suspicion on the accused. In this case the state concedes, as well it may, that the witness Walter Baker was an accomplice. There is no corroborative evidence independent of the statements which it is claimed appellant made to others after the crime was committed which tends to implicate him in the commission of the crime. The fact that appellant attempted to purchase the heifer from the owner was not necessarily inconsistent with his innocence of the crime charged. That fact together with the further facts that he knew the color of the heifer, of its brand and ear tag, may well be said to cast a grave suspicion upon him, but standing alone it is doubtful if such facts are sufficient to meet the requirements of the statute. The statements, however, which it is claimed appellant made to the sheriffs of Sevier and Piute counties tend to implicate him in the commission of the crime. We have a statute, Comp. Laws Utah 1917, § 8285, which defines larceny and which also provides that "possession of property recently stolen, when the party in posesssion fails to make a satisfactory explanation, shall be deemed prima facie evidence of guilt." According to the testimony of Sheriff Fairbanks, appellant admitted that he was in possession of the heifer within a few hours after it was killed. If the jury believed that testimony, they were at liberty to find that appellant was in possession of the heifer which had been recently stolen. The jury was not bound to believe appellant's explanation of how he came into the possession of the heifer. In light of that testimony and of the fact that appellant attempted to purchase the heifer from the owner and in light of the testimony of the sheriff of Piute county that appel-

lant, while under arrest for the commission of the crime here involved, stated, "It is our own fault. If we didn't want to be in this kind of trouble we better behave ourselves; we got nobody to blame but ourselves for this," it may not be said that the conviction rests solely upon the testimony of the accomplice, Baker. The testimony of the accomplice was sufficiently corroborated by the admission of the appellant to meet the requirements of the statute.

The judgment is affirmed.

FOLLAND and MOFFAT, JJ., concur.

STRAUP, C. J.

I dissent. I am not satisfied with the sufficiency of the evidence to connect the defendant with the commission of the offense. The statute (Comp. Laws 1917, § 8992) referred to in the prevailing opinion clearly provides that convictions "shall not be had on the testimony of an accomplice, unless he is corroborated by other evidence which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense." It further provides that "the corroboration shall not be sufficient if it merely shows the commission of the offense or the circumstances thereof."

Thus under the statute there must be evidence independent and without the aid of the testimony of the accomplice to show the corpus delicti, that an offense was committed, and to connect the defendant with it. Roscoe's Criminal Evidence, 122; State v. Geddes, 22 Mont. 68, 55 P. 919; State v. Lawson, 44 Mont. 488, 120 P. 808. The competency and admissibility of the testimony of an accomplice is one thing. Its sufficiency to justify a conviction, unless corroborated, is quite another thing. Here there is sufficient evidence to show the commission of the offense without the aid of the testimony of the accomplice, Walter Baker. He is sufficiently corroborated in such particular. The important question is whether there is sufficient evidence from an independent source and without the aid of the testimony

of the accomplice to connect the defendant with the commission, not of some offense or of some wrongful or unlawful act, but of the charged offense, the stealing, driving, or carrying away the yearling calf as charged in the information. There is evidence, direct and indirect, that Walter Baker, the brother-in-law of the defendant Gardner, killed the calf in a canyon near Marysvale in Piute county, and that he at the time falsely claimed he had purchased the calf from Moroni Barney, the alleged owner. If no one else with him participated in the theft, he alone was the thief.

Now, Baker on behalf of the state testified that, on June 22 or 23, 1931 (the time laid in the information being July 16, 1931), he with the defendants, Gardner and Colburn, were up the canyon fishing; that he fished downstream, heard a shot of a gun up-stream, losing his fish hook he shortly thereafter went up-stream and there saw the defendants with the carcass of a calf, the defendant Colburn burying the hide; that at their request he assisted them in loading the carcass in an automobile; that he threw a blanket over the carcass whereupon it was taken to the residence of Gardner at Monroe in Sevier county and there after dark hung in a tree and the next morning the meat was bottled by Gardner's wife and the wife of a neighbor. Outside of the testimony of Baker, there is no evidence that the defendant Gardner was in the canyon or at or near or in the vicinity where the calf was killed or stolen, at any time testified to by Baker, or when it was claimed the calf was killed, or stolen, or that he in any particular was connected with the commission of the offense. On the contrary there is evidence to show that the accused, at the time or period in question, was at his home in Monroe sick in bed for ten days or more.

It is conceded that if Baker was not alone the thief, he at least was an accomplice, and that without the aid of his testimony there is no evidence to connect Gardner with the commission of the charged offense, other than the claimed admissions made by him. One of such claimed admissions

is that Gardner, before his arrest, sought the owner of the calf, Moroni Barney, and told him that a friend of his, Walter Baker, had killed his (Barney's) calf, that he would like to settle it up and would give his note for it and take a bill of sale of the calf, which the owner stated he could not do because his cattle were mortgaged to a bank. It does not appear that Gardner told the owner that Baker was his brother-in-law, but did tell him that it was Baker who killed the calf and that Gardner for and on behalf of Baker desired to settle the matter. The circumstance is analogous to many such where a relative of another to avoid the making of a criminal charge against such other, offers or attempts to settle the loss of the aggrieved or injured party. Whatever else may be thought of the circumstance, it certainly may not be regarded as an admission of guilt on the part of Gardner, or of a fact connecting him with the commission of the charged offense, and though it be regarded as a suspicious circumstance yet is not inconsistent with innocence.

Another admission of the defendant relied on to connect him with the commission of the offense is the testimony of the sheriff of Piute county, that after the arrest of the defendant and while he and the defendant Colburn were being taken to jail or before a magistrate, Gardner stated, "It is our own fault; if we didn't want to be in this kind of trouble we better behave ourselves; we got nobody to blame but ourselves for this." Such language is loose and flexible, and is neither definite nor specific, and if regarded as an admission connecting the defendant with the commission of the charged offense, it could equally well be regarded as connecting him with any other offense, larceny, receiving property with knowledge that it had been stolen by another, or any other crime which might be charged against him. To connect one with the commission of a particular charged offense the law requires evidence of some fact or circumstance more direct or specific than such mere loose and flexible language as here testified to. An admis-

sion to be of probative effect must be certain, consistent, definite, and clearly proved. It must, in addition, be couched in language reasonably capable, without forced or strained construction, to bear the interpretation placed upon it. 2 Chamberlayne Modern Evidence, § 1295.

The further admission relied on is the testimony of the sheriff of Sevier county who testified that Gardner after his arrest stated to him that, "This calf or heifer was brought to his place and bottled there; he said that Baker brought it; that he and his wife (and the wives of other neighbors) attempted to bottle it because it was starting to spoil and they had to bottle it to save it; that the carcass was left in the car too long; it was not all right when they brought it; it was bottled there at the house; that some had been eaten; I don't believe that he said anything about whether there was any meat that was not bottled."

Such statement or admission of the accused is pointed to as evidence showing that Gardner was in possession of property recently stolen and that his statement that Baker brought the carcass to his house could by the jury be regarded as unsatisfactory and be rejected, and by accepting the other portion of the statement or admission, that he and his wife and others bottled the meat there was sufficient evidence to show recent possession of stolen property by the accused and that therefore he, under the statute (Comp. Laws Utah 1917, § 8285, referred to in the prevailing opinion), was prima facie guilty of the larceny. In such particular I think the substance and spirit of the statute have been misconceived. To give the statute such effect, in my opinion, is in conflict with the case of *State* v. *Potello*, 40 Utah 56, 119 P. 1023, 1027, where the statute was rather elaborately considered and construed. It is unnecessary to here review the case, except to say that, among other things, it was there held that, "a fair meaning of the statute is that, to make a prima facie case of guilt, the state, in the absence of other evidence, must show the larceny, recent possession in the accused, and that he failed to make a satisfactory

explanation. That is, that he, when asked about his possession, or when called upon to explain it, remained silent when he ought to have spoken, or gave an untruthful account, or unreasonable, or improbable, explanation, of it; or gave some explanation not consistent with innocence."

There is here no evidence that the slaughtered calf or any part thereof was found in the possession of the accused, nor is there any claim made of any such evidence (except the testimony of the sheriff as to the statement of the accused), nor is there any evidence that he was asked anything about any possession of the property or of any part thereof, or to make an explanation of any possession, or that he gave an untruthful, or an unreasonable, or an improbable explanation of any possession. The statement as testified to by the sheriff, that Baker brought the carcass to the house of the accused and that the accused and others bottled the meat were parts of an entire statement or admission, parts of one conversation made at the same time, and thus to give proper effect to the statement or admission, required a consideration of the whole of it. In other words when an entire statement as here was received in evidence, due weight was required to be given to it as a unit, self-serving equally with portions relied on by the party offering the statement or admission and where the statement is oral as here it was, everything said at the same time necessary to a full and accurate understanding should be produced in the first instance and where all is not produced, the party against whom the admission is offered, may offer what is not so produced; and that a conversation said to contain an admission by the accused must be given in its entirety, though there be included matters which distinctly are self-serving and to the interest of the accused. 2 Chamberlayne Modern Evidence, § 1297. In 3 Jones' Commentaries on Evid. (2d Ed.) § 1063, it further stated that:

"Broad statements repeatedly occur in everyday speech which, taken by themselves, have a much wider, and sometimes a wholly different, meaning than when considered in connection with the entire

conversation in which they occur or with precedent or subsequent qualifications made by the speaker. It would obviously be unfair in such instances to isolate, as alone admissible, those portions of a conversation most damaging to the speaker. Hence it is the well-settled rule that the whole of a declaration or statement containing an admission should be received together. This rule is stated in the language of Mr. Justice Field, thus: 'Every admission upon which a party relies is to be taken as an entirety of the fact which makes for his side, with the qualifications which limit, modify, or destroy its effect on the other side.' This is now a settled principle which has passed, by its universality, into an axiom of the law."

### In 22 C. J. 414, it is said that:

"When an entire statement is admitted in evidence, the self-serving part of it must be duly considered and weighed together with the unfavorable part. But all parts of the statement are not necessarily to be regarded as worthy of equal credit. The triers of fact may reject such portions, if any, as appear to be inconsistent, improbable, or rebutted by other circumstances; but they are not at liberty to disbelieve the self-serving part capricously and without any reasonable grounds; and it has been said that they cannot believe part and disbelieve another part unless such parts are distinct and relate to different matters or facts."

Now I concede that the jury are not bound to give equal credence or effect to every part of a statement or admission, and may, when sufficient reasons are made to appear, give effect to one part of an admission and reject another part or parts, unless the part or parts so rejected do not neutralize what is accepted, as where an admission of the correctness of an account accompanied by a statement that it has been paid (*Smith* v. *Jones,* 15 Johns. [N. Y.] 229), or where a firm was sued on an account and admitted its correctness and the plaintiff testifying that one of the firm had admitted the correctness of the bill in a conversation but at the same time stated he did not believe he was responsible for it (*Harris* v. *Woodard,* 40 Mich. 408). In such instances a portion of the statement or an admission neutralized another portion thereof, so here the statement that the accused and others bottled the meat was modified and qualified, if not neutralized, by the other statement that the

meat was from a carcass brought to his house by Baker. To permit the one to be rejected and to accept and consider only the other, is to put a meaning to the statement different from that conveyed by it in its entirety.

In the next place not anything is made to appear that the statement, that the carcass of the calf was brought to the house of the accused by Baker, was improbable, or unreasonable, or untruthful, or that it was contradicted or rebutted by other circumstances in evidence, except by the testimony of the accomplice; and while the jury was not required to give the same weight or credence to all portions of the statement or admission, nevertheless they could not accept a part and unreasonably or capriciously, or without reasonable grounds therefor, reject another part or parts relating to the same conversation and by so doing give it a meaning different from that conveyed by the statement in its entirety. The accused by his testimony denied the making of the statement or admission testified to by the sheriff, and both the accused and his wife testified that no meat was bottled at their house, and no testimony was adduced, outside that of the accomplice, that any meat was bottled at the house of the accused or elsewhere, except as shown by the statement or admission of the accused testified to by the sheriff. And as before stated, there was no evidence, except that of the accomplice, to contradict or rebut the statement of the accused made to the sheriff that the carcass was brought to the house of the accused by Baker. While the jury had a right to find that the statement or admission made by the accused, though denied by him, was in fact made to the sheriff, yet, on the record, for the reasons stated, the jury were not permitted to pick out and accept merely a portion of the statement, and reject other portions, when there was no reasonable ground or basis shown for rejecting the one any more than the other, and by so doing, treat the part accepted and standing alone, as evidence of recent possession of stolen property and as prima facie evidence of guilt, thereby giving a meaning to the statement

or admission which in its entirety is not warranted or justified; and that to do so is not unlike the illustration of Algrenon Sidney (referred to in the case of *Risdon* v. *Yates*, 145 Cal. 210, 78 P. 641), that what might be a criminal charge against a publisher of the Bible for printing, "The fool hath said in his heart there is no God," and select only the words, "there is no God," and base an indictment thereon for blasphemy. If by rejecting the part of the statement that Baker brought the carcass of the calf to the house of the accused as unworthy of belief and treat the remainder of the statement as prima facie evidence of guilt of the charged larceny, then a butcher, who in a conversation had stated or admitted that he had purchased from another a slaughtered calf of the description stated in the information and cut up and sold the meat, could equally be held prima facie guilty of the larceny of the calf, by rejecting as unworthy of belief the part of the statement that he had purchased the calf brought to his place of business by such other, without any showing that such rejected statement was improbable, or unreasonable, or untruthful, or contradicted or rebutted by evidence other than by testimony of the thief or of an accomplice.

I thus think the judgment should be reversed and the case remanded for a new trial.

EPHRAIM HANSON, J.

I concur in the dissenting opinion of STRAUP, C. J.