## STATE v. SHEFFIELD.

No. 2616.   Decided January 20, 1915 (146 Pac. 306).

1. INDICTMENT AND INFORMATION—PRELIMINARY EXAMINATION—NECESSITY. A preliminary examination, unless waived by accused with the consent of the State, is a prerequisite to a prosecution by information. (Page 432.)

2. CRIMINAL LAW — PROSECUTION — INSTITUTION — VERIFIED COMPLAINT—AFFIDAVIT. A verified complaint or an affidavit before a magistrate, charging accused with a public offense, is essential to a preliminary examination, since without it the magistrate's jurisdiction to act is not judicially invoked. (Page 432.)

3. INDICTMENT AND INFORMATION—APPLICABILITY TO COMPLAINT.
An information must charge the same offense alleged in the
complaint and for which accused has been held to answer, or
for one embraced or included therein, and must recite the fact
that accused was committed or bound over by a magistrate,
and must have indorsed thereon the names of the witnesses
testifying for the State on such examination, as required by
Comp. Laws 1907, section 4695.[1]  (Page 432.)

4. INDICTMENT AND INFORMATION—DESCRIPTION OF OFFENSE—TIME
—PROOF OF DIFFERENT TIME. Comp. Laws 1907, section 4737,
provides that the precise time at which the offense shall have
been committed need not be stated in the information, but it
may be alleged to have been committed at any time before the
filing thereof, except where time is a material ingredient in the
offense. *Held* that, where an information charged accused with
an adulterous act with W. on August 23, 1913, it was competent
for the State to prove such an act committed on August 16, 1913,
within the venue laid and the jurisdiction of the court and to
rely on such act for a conviction.[2]  (Page 432.)

5. INDICTMENT AND INFORMATION—MOTION TO QUASH. Under Comp.
Laws 1907, section 4771, authorizing a motion to quash an
information on specified grounds before plea and trial, a motion
to quash an information charging an adulterous act alleged
to have been committed on August 23, 1913, could not be
sustained on the trial on proof of a different adulterous act
committed on the 16th of that month and on the State's
election to rely thereon for a conviction.  (Page 439.)

6. INDICTMENT AND INFORMATION—VARIANCE FROM PRELIMINARY
EXAMINATION. That accused was informed against for adul-
tery alleged to have been committed by him with W. on
August 23, 1913, which offense alone was shown on his pre-
liminary examination, did not deprive the State of the right to
abandon the offense committed on that day and prove and
rely on a similar offense committed by accused with the same
woman on the 16th of the same month for a conviction.
(Page 439.)

7. CRIMINAL LAW — EVIDENCE — ADMISSIONS — CONFESSION. In a
prosecution for adultery, alleged to have been committed by
accused with W. on August 16, 1913, accused's mere admission

---

[1]*State* v. *Pay*, 45 Utah ——; 146 Pac. 300.
[2]*State* v. *Hilberg*, 22 Utah 27; 61 Pac. 215; *State* v. *Thompson*,
31 Utah 228; 87 Pac. 709; *State* v. *Woolsey*, 19 Utah 486; 57 Pac.
426; *State* v. *Jensen*, 34 Utah 166; 96 Pac. 1098—distinguished.

of sexual intimacy with her, not amounting to an acknowledgment of guilt of the act relied on for conviction or of any other specific similar act within the period of limitations, was not a confession of guilt. (Page 440.)

8. CRIMINAL LAW—CORPUS DELICTI—PROOF—CONFESSION. A confession of accused is not alone sufficient to prove the *corpus delicti*. (Page 440.)

9. ADULTERY—EVIDENCE. In a prosecution for adultery, evidence *held* insufficient to sustain a conviction for committing such offense on the date and time elected by the State for a conviction. (Page 441.)

Appeal from the District Court, First District; *Hon J. D. Call,* Judge.

Robert Sheffield was convicted of adultery. He appeals.

REVERSED AND REMANDED.

*Maughan & Law* and *Geo. Q. Rich* for appellant.

*A. R. Barnes,* Atty. Gen., and *E. V. Higgins* and *G. A. Iverson,* Asst. Attys. Gen., for the State.

STRAUP, C. J.

The defendant was convicted of adultery, and appeals. The alleged errors are: That he was not given a preliminary examination of the offense for which he was tried and convicted; insufficiency of the evidence to support the verdict; and that the verdict is against the charge.

A complaint was filed before a magistrate charging the defendant, a married man, with adultery committed with W., an unmarried woman, on the 23d of August, 1913, in the County of Cache. Upon that complaint he was given a preliminary hearing and held to answer. An information was filed in the district court charging him with adultery, as in the complaint alleged, on the 23d. He pleaded not guilty. On the trial the district attorney called a witness and offered to show associations between the defendant and W. on the 16th. To that the defendant objected on the ground that the transaction so offered to be shown was not the same transac-

tion described in the complaint or in the information, moved
to quash the information, and, in support of the motion, of-
fered to show that at the preliminary examination all the
evidence was directed to an adulterous·act claimed to have
been committed on the 23d, and not the 16th.   The district
attorney also stated that he elected ''to rely for a conviction
upon a transaction occurring on or about the 16th,'' and over
the defendant's objections, along the same line, was per-
mitted to adduce evidence respecting that occasion.   W., a
witness called by the State, after testifying that she was an
unmarried woman and acquainted with the defendant, testi-
fied that on the 16th she, at the residence of B. in Logan, was
in company with M., B.'s daughter; the defendant, and one
Kimball.   That is all of any materiality testified to by her.
M. was called, who testified that she, W., the defendant, and
Kimball were together in the dining room of her father's
house at about ten o'clock on the 16th.   What the occasion,
incident, or purpose was of their meeting was not testified to.
Her parents were absent, visiting in Idaho.   No one else was
in the house except her ''little brother,'' who was asleep in
an adjoining room.   She further testified that on that occasion
the defendant and W. left the dining room, went to the par-
lor, an adjoining room, closed the door between the rooms,
remained there for about an hour, and then returned to the
dining room.   This was all that was testified to by her as to
that occasion.   She did not testify as to anything else heard
or observed, nor as to anything said or anything else done
by any one; nor anything further with respect to the conduct,
demeanor, behavior, or appearance of either the defendant or
W.   That is the time and the place the State claimed, and
elected to show, the adulterous act charged was committed.
M. further testified that on two other occasions in May she
and Kimball, and the defendant and W. were motoring after
dark.   On one of them on the outskirts of town the car was
stopped, the defendant and W. left it, went away, were gone
about thirty minutes, and then returned.  ·On the other, the
car was stopped near the Agricultural College grounds.   That
time Kimball and M. left the car, went away, were gone about
thirty minutes, and then returned, finding the defendant and

W. at the car. That was all that she testified to as to those occasions. M. further testified that in June she was at the residence of W.'s father in Logan. W.'s father, her brother, and sister were at home. At about nine o'clock, the defendant and Kimball there called on W. and M. in the parlor. On that occasion the defendant and W. left the parlor, went into the dining room, drew the curtains between the two rooms, remained there about an hour, and then returned to the parlor. That was all that she testified to as to that occasion. Again nothing was testified to as to the incident of the visit, nor as to anything said or done by any one, except as stated. These occasions were permitted to be shown to show an adulterous disposition or inclination between the defendant and W. M. further testified that, shortly before the defendant's arrest, Kimball, in his presence and in the presence of the two women, stated that if they "did not testify they could not punish them (the defendant and Kimball)." An officer testified that on the night of the 23d of August he asked the defendant, "How long have you been screwing" W.? and that he replied: "My God! Don't ask me that question." The officer said, "You know you have been doing it," to which the defendant replied: "I know I have, but we have cut it out. You know what it will mean to my wife and family if this gets out to the public. Let us close it up; call it off." That is the State's case.

At the conclusion of its evidence the defendant moved for a discharge on the ground of insufficiency of the evidence, and to quash the information on the further ground that he was not given a preliminary examination of the offense and transaction of the 16th, and, in support of the motion, again offered to show that the only transaction investigated at the preliminary hearing was one on the 23d, and that the occasion or transaction testified to by the witness on the trial was a different occasion and a separate and distinct transaction. The court again denied the offer, and overruled the motions.

The defendant then renewed the offer as a part of his case. The court now admitted it. The defendant was permitted to put in evidence a transcript of a stenographic report of the proceedings and the evidence adduced at the preliminary ex-

amination, which report was taken and transcript made, at the instance, for the benefit, and at the expense of the defendant. It shows that all the witnesses testifying at the preliminary examination testified concerning an occasion on the night of the 23d at B.'s house and at a time when the defendant, Kimball, M. and W. were present and alone in the house. It further shows that at that hearing no evidence whatever was adduced as to any other night or to any other occasion, nor concerning any other relation or association between the defendant and W. At the trial no witness was called by the State who had given testimony at the preliminary examination, except the officer, who testified only as to the admission made by the defendant heretofore referred to. M. also testified that the occasion and the night at B.'s house, testified to by her as being on the 16th, was not the occasion nor the night testified to by the witnesses at the preliminary examination as being on the 23d. Upon that undisputed evidence the defendant again moved the court to quash the information and for a discharge on the ground that he was not given a preliminary examination of the transaction and offense claimed to have been committed on the night of the 16th, the one elected by the State and relied on for a conviction. The motion was denied.

The court charged the jury that to convict the defendant the State was required to prove beyond a reasonable doubt that he "in the month of August on or about the 16th, the exact date alleged not being material to be proved, and before the filing of the complaint in the justice's court and before the 23d day of August, 1913, did have sexual intercourse with" W., and further charged them that:

The State "has elected to rely for a conviction upon the act of adultery alleged to have been committed on or about the 16th day of August, 1913, which alleged act, for the purpose of this case, is the one charged in the information, and that any testimony of any act of adultery committed prior to the said 16th day of August, 1913, if you find any act of adultery was committed, was received for the purpose of explaining the said alleged act, and as showing a tendency to render it more probable that the said act charged in the

information was committed, and you are not to consider such testimony as independent testimony, and the same is limited to the purpose as in this instruction set forth, and unless you find beyond a reasonable doubt that the defendant is guilty of the act of adultery complained of in the information, as herein explained, then your verdict must be in favor of the defendant, not guilty.''

It is thus seen that while the defendant was finally permitted to show that the occasion on the 23d of August, as testified to by all the witnesses at the preliminary examination, and that of the 16th as testified to by the witnesses on the trial, were different nights and different occasions, nevertheless, the court by its charge destroyed, both in fact and in law, all that the defendant claimed for that proof. Complaint is made of this, and of the court's refusal to hear the defendant's proof as tendered before receiving testimony concerning the occasion of the 16th.

Under the Constitution and the statutes of this state, a preliminary examination, unless waived by the accused with the consent of the State, is a prerequisite to a prosecution by information. A verified complaint **1, 2, 3, 4** or an affidavit before a magistrate charging the accused with a public offense is essential to the examination. Without it the power of the magistrate to act is not judicially invoked. So, also, must the information be for the same offense charged in the complaint and for which the accused was held to answer, or for one embraced or included within it (*State* v. *Pay*, 45 Utah 411; 146 Pac. 300), and ''must recite the fact of the commitment or binding over of the defendant by a magistrate, and the names of the witnesses testifying for the State on such examination must be indorsed thereon'' (Comp. Laws 1907, section 4695). Here, a verified complaint was filed on the 3d of September, 1913, before a magistrate charging the defendant with adultery committed with W. on the 23d of August of that year. On that complaint the defendant, on the 10th of September, was held to answer for such offense. On the 4th of October, 1913, an information was filed charging him with such offense committed with W. on the 23d of August, and reciting that he

had been theretofore duly committed by a magistrate "to answer to this charge." There is no defect in the complaint, nor in the information. The same offense described in the one is described in the other. Generally speaking, matters presenting questions relating to the examination, or that the information charged an offense other than and different from that described in the complaint, or that the defendant was not given an examination of the offense charged, or to defects, other than substance and sufficiency, in the information, must be presented before plea and trial. The defendant, however, claims that, since the information was in every particular perfect and corresponded in every respect with the complaint, and both as to time and place described the same offense described in the complaint, there was neither occasion nor opportunity to show that the examination was directed to an act claimed to have been committed on the 23d and no other, until the State offered to prove one on the 16th and elected to rely on it for a conviction. This but shows that the real question presented by the objection and ruling is one of *allegata* and *probata*. Our statute (Comp. Laws 1907, section 4737) provides that:

"The precise time at which the offense shall have been committed need not be stated in the information or indictment, but it may be alleged to have been committed at any time before the filing thereof, if an information; or, if an indictment, before the finding thereof, except where the time is a material ingredient in the offense."

That, also, is the general rule independently of a statute. The adulterous act between the defendant and W. sought to be proved was prior to the filing of the information and within the period of limitation. The question then is: Under an information charging the defendant with an adulterous act with W. on the 23d, was it competent for the State to prove such an act, and base a conviction on it, committed on the 16th between the same parties and within the laid venue and jurisdiction of the court? We think that question must be answered in the affirmative.

Vol. 45—28

Time being immaterial, the adulterous act of the 16th was as much charged in the complaint and in the information as one on the 23d. To hold otherwise is to hold that the State was bound by the date laid in the complaint and in the information. As to this, the case of *State* v. *Hilberg*, 22 Utah 27; 61 Pac. 215, is in point. There, as here, a single act was charged. It was charged on the 15th of February, 1898. The State, over the defendant's objections, was permitted to prove the act to have been committed in April, 1897, and to put in evidence proof of five other similar acts committed thereafter, in 1897 and in 1898, the last in April, 1898. The court held that under the information it was proper to prove an act charged to have been committed in April, 1897, and to base a conviction upon it; but, inasmuch as it had first directed its evidence to the act of April, 1897, it, in law, must be held to an election for a conviction as to that act and none other, and, while it could prove for secondary considerations prior similar acts, it could not prove any thereafter. The court, after stating that the time stated in the information was immaterial, and that under well settled rules in criminal cases the prosecution, before evidence was introduced, could have selected any one of the criminal acts in proof, which occurred within the statute of limitations and the jurisdiction of the court, as the offense for which it would ask a conviction, said:

"Only one offense was charged, but six different offenses were proven. Any one of the acts selected by the prosecution, before the introduction of the evidence, would be as properly the act charged in the information as the other. Until the evidence of some act was given, the charge in the information was floating, uncertain, and contingent, aimed as much at one act as at another, and, in the absence of an election by the prosecution, it remained for the evidence to designate and point out the particular act intended, and upon which the prosecution would rely for a conviction. When evidence was introduced tending directly to prove one act, and for the purpose of securing a conviction upon it, from that moment that particular act became the act charged. No election having been made by the prosecution, the law made the election. What before this had been uncertain and contingent was now fixed and definite. This election having been thus made by proving the first act of intercourse as having taken place in April, 1897, no subsequent election could be made; nor could the prosecu-

tion prove any other act of the kind as a substantial offense upon which a conviction could be had; but it could prove the intimacy and improper relations of the parties prior to the acts shown in the month of April 1897, but not afterwards."

To support this are cited, among others, the cases of *People* v. *Jenness,* 5 Mich. 305, and *People* v. *Clark,* 33 Mich. 112. In the first the Michigan court said:

"The prosecutor having the right to select among all the acts of the kind which he could prove to have been committed between the parties, within the period alluded to, and within the jurisdiction, any one of those acts, before evidence had been introduced, was as properly the act charged in the information, as any other. In other words, until evidence of some such act had been given, the charge in the information was floating and contingent, aimed as much at one as another, and at no one act in particular; and it remained for the evidence to point the charge to the particular act intended. But when evidence had been introduced tending directly to the proof of one act, and for the purpose of procuring a conviction upon it, from that moment that particular act became the 'act charged.' What had, till then, been floating and contingent, had now become certain and fixed. The prosecutor had made his election, and could not elect again, nor could he be allowed to prove any other act of the kind as a substantive offense upon which a conviction might be had in the cause. The information could be used as a dragnet only till the first act had been entangled in its meshes; every other act must be allowed to escape this throw of the net; and thenceforward the evidence must be aimed at this act. If others of the same kind lie in the same range, they can only be noticed for a secondary purpose, as they may be connected with or bear upon this."

To the same effect are, also, *State* v. *Thompson,* 31 Utah 228; 87 Pac. 709, and *State* v. *Woolsey,* 19 Utah 486; 57 Pac. 426.

A question very similar to the one here arose in Vermont, in the case of *State* v. *Willett,* 78 Vt. 157; 62 Atl. 48. There the offense charged was rape alleged in the information to have been committed on the 9th of September. The State's attorney, in his opening statement, said that he expected to prove an offense in August. Upon that the defendant moved to quash the information, and later moved for a verdict on the ground of variance between allegation and proof as to

the time the offense was committed. Both motions were over-ruled, and both rulings upheld,

The defendant, in support of his contention, chiefly relies on the case of *State* v. *Jensen,* 34 Utah 166; 96 Pac. 1098, and *Lee* v. *State,* 147 Ala. 133; 41 South. 677. In the first, the offense charged was fornication. It was charged both in the complaint before the magistrate and in the original informa-tion filed in the district court, to have been committed on July 24, 1904, a date without the period of limitation. On the ground that the offense, on the face of the information, was barred, the court sustained the defendant's motion to quash the information. The district attorney was then per-mitted to file, not an amended but a new information charg-ing an offense on the 15th of December, 1904, a date within the period of limitation. A further motion before plea and trial was interposed to quash that information on the ground that the defendant, as to the offense stated therein, was given no preliminary examination. The lower court denied the motion. This court held it ought to have been granted. But there the motion to quash was interposed before plea and trial; here, after plea and upon the trial. The question there was not, as here, one of *allegata* and *probata.* It was one alone of *allegata.* While time as to an offense such as this is not material, yet some time within the period of limitation must be alleged. Underhill, Crim. Ev. (2d Ed.), section 32. And where in an information or an indictment a date is alleged which is not within the period of limitation, the infor-mation or indictment, according to some authorities, is bad on a motion to quash (*Rouse* v. *State,* 44 Fla. 148; 32 South. 784; 1 Ann. Cas. 317; *Lamkin* v. *People of Illinois,* 94 Ill. 501; *State* v. *Robinson,* 29 N. H. 274); and, according to others, on demurrer (*People* v. *Ayhens,* 85 Cal. 86; 24 Pac. 635; *Hansford* v. *State,* 54 Ga. 55; *Williams* v. *Common-wealth,* 37 S. W. 839; 18 Ky. Law Rep. 667; *State* v. *Bryan,* 19 La. Ann. 435), for the information, in such case, and upon one of the grounds stated in the statute (Comp. Laws 1907, section 4779, subd. 5) for which a demurrer lies, contains matter constituting a "legal bar to the prosecution" of the charged offense. Hence, as against such an attack, an infor-

mation, to be good, must allege a date within the period of limitation. The precise date so alleged need not be proved. It is sufficient if it be proved at any time prior to the filing of the information and within the period of limitation. Perhaps it is required to be proved at a time prior to the filing of the complaint. That is not involved here. Thus, it is seen the original information in the *Jensen* case was quashed because it contained matter constituting a legal bar to the prosecution. The new information filed thereafter was wholly based, as was the original information, on the complaint before the magistrate. But the complaint likewise, on its face, contained matter constituting a legal bar. The foundation was no better for the second than for the first information. Because the complaint stated no offense, except one barred and for which the accused could not be legally prosecuted, and since the second information, wholly based on that complaint, charged an offense within the period of limitation, it may be said that the two offenses, on the face of the record before the court, were different—one wholly without, the other within, the period; one for which the defendant could not, the other for which he could be legally prosecuted. The decision itself in that case is not questioned. Perhaps the better ground upon which it rests is that upon the record before the court it was clearly made to appear that the second information was wholly founded on the complaint before the magistrate, which, on its face, contained matter constituting a legal bar to the prosecution. And, since under it the magistrate could not properly investigate any offense for which the accused could legally be prosecuted, none such could properly be charged in the information. It is no answer to this, as announced in a few cases, that limitation is a matter of proof; for the weight of authority is that the State is not only required to prove, but also to allege, a time within that period. And, if the pleading shows a stated time without such period, it is bad either on a motion to quash or on demurrer.

In the Alabama case the real question was one of *allegata* and *probata.*

Here the information is unassailed and unassailable, either
as to matters contained therein or the foundation or proceed-
ing upon which it is founded. When under such an infor-
mation proof in support of it is offered the question then is:
Is the proof competent, relevant, and material? A proper
determination of that requires a comparison and consideration
of what is alleged with that which is offered to prove. And
under the *Hilberg* and other cited cases to support the alle-
gation in the information that the charged adulterous act
was committed on the 23d, it was competent to prove one
committed on the 16th, a time prior to the filing of the in-
formation and within the period of limitation. That is not,
according to the authorities, making proof of an offense other
than and different from that charged in the information.
What here is the charged offense? Adultery, committed by
the defendant with W. within the laid venue and jurisdiction
of the court. What are the essentials of that offense? That
the defendant, a married man, within that venue and juris-
diction carnally knew W., a woman not his wife. It is of
little moment when that sexual intimacy, that criminal act,
was committed so long as it is alleged and proved to have
been committed prior to the filing of the information and
within the period of limitation. The State could take a con-
viction for only one such criminal act or offense; and since
under the *Hilberg* and other cases, and under such an in-
formation as here which did not designate the place except
"within the county," it could prove it at any time within such
period, and at any place within the county, a judgment of
conviction or acquittal would bar any other prosecution of
the defendant by the State for any other similar act alleged to
have been committed between him and W. within the same
period and within the same jurisdiction; for the facts alleged
in such second and subsequent information would, if given in
evidence, have warranted a conviction on the first information.
12 Cyc. 280, and cases; notes 92 Am. St. Rep. 105; *Craig*
v. *State*, 108 Ga. 776; 33 S. E. 653; *State* v. *Blahut*, 48 Ark.
34; 2 S. W. 190; *Bryant* v. *State*, 72 Ark. 419; 81 S. W. 234.
It might be different in a case where in the first information
it was alleged that the adulterous act had been committed at

a particularly described place, for then proof of the commission of the adulterous act at a different place would not support the information.

When the State thus by its evidence or otherwise anchored its case and elected to try the defendant for an act of adultery committed with W. on the 16th, he was not entitled to arrest all further proceedings and show that the **5, 6** evidence at the preliminary examination was directed to a criminal act claimed to have been committed on the 23rd, and not on the 16th, and on such ground move to quash the information. There can be no doubt that, under the complaint charging the criminal act or offense on the 23rd, the magistrate could have investigated one claimed to have been committed on the 16th. The one being charged as well as the other, evidence before the magistrate to establish the charged offense was as permissible to show the one as the other. Since the information may be as broad as the complaint and for any criminal act or offense charged or embraced within it and which under it properly could have been investigated by the magistrate, it necessarily followed that what was alleged in the complaint and which could have been proved under it as the act or offense charged may also be alleged in the information and proved under it. Under our Code, motions to quash must come before plea and trial. The grounds therefor are specified in Comp. Laws 1907, section 4771. No such ground as that upon which the defendant here moved to quash is specified. The action invoked in such respect is an innovation in our procedure. Much delay must, and in some instances considerable mischief would, necessarily result from such a practice. Every case, though time was immaterial, yet where it was departed from as laid in the information, would give rise to questions of what the evidence before the magistrate was and whether it was directed to one or the other date or act. The evidence before the magistrate is not required to be and is not reported or preserved, or certified up, except in homicide cases or when ordered on the request of the county attorney. In all other cases, proof of what the evidence before the magistrate was would have to be made independently of any record and by the testimony of witnesses who were present at the

hearing and heard the evidence. That in many cases would give rise to controversies as difficult of determination as the issues themselves. That the defendant here, at his own instance, for his own benefit, and at his own expense, had the proceedings before the magistrate stenographically reported and transcribed, does not help the matter, for one procedure cannot be adopted when that is done and another when it is not done. We need not now determine when, nor the circumstances under or purposes for which, the proceedings or the evidence before the magistrate may be inquired into; for surely it must be that upon a trial neither can be inquired into to ascertain and determine a question of variance, whether what is offered to be proved may be proved under a good and an unassailed information. We are therefore of the opinion that the defendant was not entitled to show what he finally was permitted to show, and hence cannot complain because the court thereafter by the charge destroyed it.

Upon the State's election and under the charge, the jury, before they could convict the defendant, were required to find that the act of the 16th so elected and relied on for a conviction was committed. The further question therefore is: Was the evidence sufficient to support the conviction? Of course, the State was not required to prove the criminal act by direct evidence. Were that kind of evidence exacted, few convictions of those guilty of sexual offenses could be obtained. But the facts and circumstances proved must, nevertheless, justify a reasonable inference or conclusion that the act so elected and relied on was in fact committed. What have we?

The evidence of most significance is that of the defendant's admission of sexual intimacy with W. It is not a confession, for it does not point to an acknowledgment of guilt of the criminal act elected by the State, and for which he **7, 8** was tried and convicted, or of another within the period of limitation. Whatever diversity of opinion obtains as to whether a confession is alone sufficient to prove the *corpus delicti*—the undoubted weight of authority being that it is not, and that the body of the crime must be proved independently of the confession—we start with the proposition that the defendant, while he, by his admission, whether it be called

that or a confession, admitted criminal intimacy with W., yet did not admit the adulterous and criminal act for which he was tried and convicted, or any particular act. From what he said, it, of course, can be assumed that at some unstated and undisclosed place, and at some unstated and indefinite time, except as may be inferred some time after his marriage, he had, on more than one occasion, been criminally intimate with W.; but whether such intimacy was within the period of limitation, or within the jurisdiction of the court, was not stated, nor admitted by him, and much less did he state or admit that on the occasion, and at the time and place anchored by the State, he had been guilty of such intimacy.

We are therefore required to look elsewhere for evidence to show that the criminal act so relied on by the State was in fact committed. All we have is the testimony of W. and M. We have already referred to it. The circumstance testified to is that the defendant and W., and Kimball and M., at ten o'clock at night were present in the dining room of B.'s private residence; he and his wife being absent. Nothing is testified to as to the occasion, the incident, the conduct or demeanor of the parties, or their doings, except that the defendant and W. left the room, went into the parlor, shut the door, remained there an hour, and then returned to the dining room. That at most but raises a suspicion or conjecture. But the law, to convict, requires something more than that. Nothing more can be said of the occasion testified to in June at W.'s house, or the occasions when the parties were motoring, proof of which was permitted to show an adulterous disposition or inclination. The only other evidence is the statement of Kimball in the defendant's presence to the two women before the defendant's arrest that if they did not testify the defendant and Kimball could not be punished. That, of course, is an implied admission of something, and one which may be inferred was acquiesced in by the defendant; but it points to nothing, certainly not to a commission of the charged offense. Thus, the difficulty is that, when we look to the evidence outside of the defendant's admission to the officer, we find nothing but suspicion and conjecture to show criminal intimacy between the defendant and

W. on the occasion and at the time and place elected by the State and relied on for a conviction. While it is important that guilty parties be punished, it is just as important that no one shall be punished for an alleged crime the body of which is not proved by evidence other than by the accused's admission or extrajudicial confession, and still more important that he be not so punished where the admission, as here, does not with reasonable certainty point to the crime or criminal act elected and relied on by the State for a conviction, or to one within the period of limitation or within the laid venue, and where, as here, the evidence independently of the admission raises but a mere suspicion or conjecture. We therefore think the evidence insufficient to support the verdict.

The judgment of the court below is reversed, and the case remanded for a new trial.

FRICK, J., concurs.


McCARTY, J. (concurring).

In some jurisdictions the living and consorting together by a man and woman in adulterous relations is made a crime by statute somewhat separate and distinct from that of adultery. In such cases the crime consists of the habitual carnal relations of the parties. Occasional acts of illicit intercourse between them are, ordinarily, not sufficient. 25 Cyc. 210. This, however, is not that kind of a case, and hence each separate and distinct act of illicit intercourse between the parties constituted a crime. The defendant, as I read the record, was given a preliminary hearing before a committing magistrate for one offense—a specific criminal transaction—and was tried for and convicted of another. At the preliminary hearing in which the defendant was held to answer to the district court the evidence introduced related solely to an alleged adulterous act of August 23, 1913. No evidence whatever was introduced respecting the alleged adulterous act of August 16th—the transaction for which the defendant was tried and convicted. In fact, it was not suggested at the preliminary hearing by the prosecuting attorney, or by any one of the witnesses, that the defendant was even suspected of having had sexual intercourse

Appeal from First District.

with the girl named in the information on any day other than August 23rd. I am therefore clearly of the opinion that his constitutional right which entitled him to a preliminary examination before trial was denied him. The district court, as I view the case, was without jurisdiction to put the defendant on trial for the offense—the particular transaction—for which he was convicted. I fully concur, however, with the Chief Justice in the disposition made of the other questions discussed in the opinion.