## STATE v. KIMBALL.

No. 2617.   Decided January 20, 1915 (146 Pac. 313).

1.  INDICTMENT AND INFORMATION—TIME OF OFFENSE—VARIANCE. That accused was informed against and had a preliminary examination for alleged adultery committed August 23, 1913, did not prevent the State at the trial from relying on a prior separate act between the same parties on the 16th of the same month.  (Page 444.)

2.  CRIMINAL LAW—TESTIMONY OF ACCOMPLICE—CORROBORATION. Where accused was charged with adultery with M., she was an accomplice, and he could not be convicted on her testimony unless corroborated by other evidence which in itself and without the aid of her testimony tended to connect accused with the commission of the offense, as provided by Comp. Laws 1907, section 4861.  (Page 446.)

3.  CRIMINAL LAW—ACCOMPLICE'S TESTIMONY—CORROBORATION.   In a prosecution of accused for adultery with M. on August 16, 1913, evidence of W., that on the evening of that day she was in company with accused and M. in the dining room of B.'s house, that she left accused and M. alone in the room and subsequently returned, and that before she left accused in her presence "put his arm around" M., was insufficient corroboration of M.'s testimony to support a conviction.  (Page 446.)

4.  CRIMINAL LAW — ACCOMPLICE'S TESTIMONY — CORROBORATION — PRIOR ACTS.   In a prosecution for adultery with M. on August 16, 1913, her testimony to the commission of such offense, to

which she was an accomplice, could not be corroborated so as to sustain a conviction by her own testimony of prior similar acts with accused in May and June of that year. (Page 447.)

5. ADULTERY—EVIDENCE. In a prosecution for adultery alleged to have been committed with M. August 16, 1913, evidence *held* insufficient to sustain a conviction.[1] (Page 448.)

Appeal from District Court, First District; *Hon. J. D. Call,* Judge.

Roy Kimball was convicted of adultery. He appeals.

REVERSED AND REMANDED.

*Maughan & Law* and *Geo. Q. Rich,* for appellant.

*A. R. Barnes,* Attorney General, and *E. V. Higgins* and *G. A. Iverson,* Assistant Attorney Generals, for the State.

STRAUP, C. J.

The defendant, a married man, was convicted of adultery. alleged to have been committed with M., an unmarried woman. He appeals.

Similar questions are presented as were presented in the case of *State* v. *Sheffield,* 45 Utah 426; 146 Pac. 306. The criminal act, as in the *Sheffield* case, was, in the complaint before the magistrate and in the information, charged to have been committed on the 23rd of August, 1913. At the trial, as in the *Sheffield* case, the State elected to rely on an act claimed to have been committed on the 16th, and offered proof to show the commission of it at that time in B.'s house in Logan. To that the defendant objected, claiming that he had had no preliminary examination as to any such offense or transaction, moved, on that ground, to quash the information, and, in support of the motion, offered

---

[1]*State* v. *Spencer,* 15 Utah 149; 49 Pac. 302; *State* v. *Collett,* 20 Utah 290; 58 Pac. 684; *State* v. *James,* 32 Utah 152; 89 Pac. 460; *State* v. *Lay,* 38 Utah 143; 110 Pac. 986. Distinguishing *State* v. *Park,* 44 Utah 360; 140 Pac. 768.

to show that all the evidence adduced before the magistrate was directed to an act claimed to have been committed at B.'s house on the night of the 23rd, and no other. The objections and motions were overruled. They were renewed at the close of the State's case, and again as a part of the defendant's case, and again were overruled. The State went to the jury and took a conviction on the act so elected by it. The complaint therefore here is based on the refusal of the court to permit the defendant to show, in support of his objections and motions, that the occasion testified to by the witnesses on the preliminary examination as being on the 23rd was an occasion or transaction other than and different from that testified to by the witnesses on the trial as being on the 16th. We think no error was committed by the rulings. What we said as to that in the *Sheffield* case applies here.

The question as to sufficiency of evidence to support the verdict is also presented. The evidence here is not the same as it was in the *Sheffield* case. Here M., an accomplice, testified that on the night of the 16th she and the defendant, Sheffield, and W., an unmarried woman, at about ten o'clock at night, were together in the dining room of her father's private residence at Logan, and at a time when her parents were absent. Sheffield and W. left the dining room and went into the parlor, closed the door, and remained there about an hour, and then returned to the dining room. During their absence, M. and Kimball, in the dining room, as she testified, were criminally intimate. It is that criminal act claimed to have been committed that night and on that occasion, which the State elected and relied on for a conviction. She further testified that in June of that year the defendant and Sheffield called at the home of W.'s father at Logan and met her and W. in the parlor at a time when W.'s father, brother, and sister were at home in another part of the house, and that on that occasion Sheffield and W. left the parlor, went in the dining room, drew the curtains, and remained there about an hour, when they returned to the parlor; and that during their absence she and the defendant, in the parlor, were, as testified to by her, again criminally intimate. She further testified to two other occasions of criminal intimacy in May, when she and the

defendant and Sheffield and W. were motoring after dark. On those occasions, she testified, the car was stopped, that she and the defendant left it, went away a short distance, and were criminally intimate on the ground. Evidence as to these criminal intimacies in May and June was permitted to show an adulterous disposition or inclination between the defendant and M. and as bearing on the question of whether the criminal act was committed by them on the 16th of August in B.'s house. She further testified that, shortly before the defendant's arrest, he and Sheffield met her and W. on the street, and stated to them that if they did not testify the defendant and Sheffield could not be punished.

M. was an accomplice. That is conceded. Under our statute (Comp. Laws 1907, section 4862), a conviction could not be had on her testimony unless she was corroborated by other evidence, which, in itself and without the aid of      **2, 3** her testimony, tended to connect the defendant with the commission of the offense. The corroboration is this: W. testified that on the evening of the 16th of August, the hour she did not remember, she was in company with the defendant and M. in the dining room of B.'s house; that she left the room, leaving the defendant and M. alone in the room, and subsequently returned; and that, before she left, the defendant, in her presence, "put his arm around" M. No other fact, circumstance, or thing whatever was testified to by her respecting that night or occasion. Where she went, when she left the room, or how long she was gone before she returned, nor the cause or occasion of her leaving, was not testified to by her. That is the only corroboration of the testimony of M. that she and the defendant on that occasion were criminally intimate, the time and the place elected and relied on by the state for a conviction. W. also testified that in June she was in company with the defendant and M. in the parlor of the latter's home, and that on that occasion she left the room, leaving the defendant and M. alone, and subsequently returned. She testified that she did not know how long she was gone, nor whether while she was gone the room was dark or light. Again, no other fact, circumstance, or thing whatever was testified to by her as to that occasion. But what was so

testified to by her, leaving the room and leaving the defendant and M. alone in the room, is claimed to corroborate the testimony of M. that she and the defendant were then criminally intimate. W. further testified that in May she saw the defendant and M. riding in an automobile near or at the places testified to by M., saw the automobile stop, saw them get out on one occasion, but did not know whether they left the automobile, or where they went, or what they did; and, on the other, that she did not know where the automobile was stopped or whether the defendant and M. left it or not. This is claimed to corroborate the testimony of M. that she on those occasions was criminally intimate with the defendant.

It is claimed that the testimony of the accomplice that she was criminally intimate with the defendant on the night of the 16th of August is corroborated by her own testimony that she was criminally intimate with him in May and in June. The cases of *Hamilton* v. *State,* 36 Tex. Cr. R. 372; 37 S. W. 431, and *Cooksey* v. *State* (Tex. Cr. App.), 58 S. W. 103, somewhat lend support to such a contention; but they in such respect were modified by that court in the case of *Smith* v. *State,* 44 Tex. Cr. R. 137; 68 S. W. 995; 100 Am. St. Rep. 849, and overruled in the case of *Smith* v. *State* (Tex. Cr. App.), 73 S. W. 401. A mere reading of our statute shows that the testimony of an accomplice of criminal intimacy with another is not corroborated by the further testimony of the accomplice of prior and similar criminal intimacies. The statute requires corroboration by evidence other than that of the accomplice and "which, in itself and without the aid of the testimony of the accomplice tends," etc. Under such a statute, an accomplice swearing to one act of criminal intimacy does not meet the requirement of corroboration by swearing to another or a number of acts of similar criminal intimacies. The other corroborating testimony pointed to is that of W. Now, does her mere testimony that she was in the dining room of a private residence on the night of the 16th with the defendant and M., that she left it, leaving them alone in the room, and subsequently returned, without showing anything more, where she went, how long she was gone, nothing further as to the things said,

done, or observed, or with respect to the conduct, demeanor, or behavior of the parties, except that the defendant, in her presence, "put his arm around" M., corroborate the testimony of M., the accomplice, that she, at that time and place, in the absence of W., was criminally intimate with the defendant? From the testimony of W. it is hard to infer even an opportunity to commit the offense. For aught that appears on this record, except as aided by the testimony of the accomplice, M. left the room but a moment and returned immediately. So, with respect to the testimony of W. concerning the occasions in June and in May already referred to. Nothing was testified to by her which in any degree tends to show the commission of an offense or to connect the defendant with it.

The evidence, outside of the testimony of the accomplice, considered by "itself and without the aid of the testimony of the accomplice," hardly raises a suspicion. The question of sufficiency of evidence to corroborate an accomplice has been before this court in a number of cases. *State* v. *Spencer,* 15 Utah, 149; 49 Pac. 302; *State* v. *Collett,* 20 Utah, 290; 58 Pac. 684; *State* v. *James,* 32 Utah, 152; 89 Pac. 460; *State* v. *Lay,* 38 Utah, 143; 110 Pac. 986. From what is there said, especially in the *Lay* case, where the question is fully considered and the authorities reviewed, we think it necessarily follows that the evidence here is insufficient. The case of *State* v. *Park,* 44 Utah 360; 140 Pac. 768, where we held the evidence sufficient, does not make against this, for there is a marked dissimilarity of the facts of that and of this case.

The judgment of the court below is therefore reversed, and the case remanded for a new trial.

FRICK, J., concurs.

McCARTY, J. (concurring in the reversal of the judgment).
For the reasons stated in my concurring opinion filed in the case of *State* v. *Sheffield,* I am of the opinion that the evidence in question should have been admitted.